**SANDERS et al. v. GLENSHAW
GLASS CO., Inc.**

No. 10971.

United States Court of Appeals
Third Circuit.

Argued April 10, 1953.

Decided May 13, 1953.

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

William A. Challener, Pittsburgh, Pa., for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a verdict and judgment for the defendant in a personal injury case brought by a minor plaintiff and her mother, the latter for loss of services. The minor, Susie Ann Sanders, suffered an injury to her eye when working as a helper in a cafeteria in Revere High School, Boston, Massachusetts. The injury was caused by the explosion of a soda pop bottle in a cooler at the place she was working at the time. This suit is against the Pennsylvania corporation which manufactured the bottle and, in turn, sold and shipped it to a Massachusetts bottler. The bottler filled the bottle and caused it to be transported to the school cafeteria where the accident took place.

The case is in federal court by reason of diversity only. The Pennsylvania rule of reference applies, and by that law the reference will be to the law of Massachusetts. Restatement, Conflict of Laws, § 379; Diesbourg v. Hazel-Atlas Glass Company, 3 Cir., 1949, 176 F.2d 410; Goodwin v. Townsend, 3 Cir., 1952, 197 F.2d 970. Massachusetts now imposes liability upon manufacturers for injuries sustained by negligent defects in the manufactured article even though there exists no privity between the injured person and the manufacturer. Carter v. Yardley & Co., 1946, 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 559. The burden to show negligence in such a case is upon the plaintiff, and the fact of explosion of a bottle of carbonated liquid is not of itself sufficient to establish negligence. Ruffin v. Coca-Cola Bottling Co., 1942, 311 Mass. 514, 42 N.E. 2d 259. While we have thus set out the reference to foreign law as required by

Klaxon Co. **v.** Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, we do not find, in further points to be discussed in the case, any significant questions with regard to which the choice of law becomes important.

Since the minor plaintiff had the unusual experience of being defeated in a suit for personal injuries in which all the sympathy of judge and jury would be on her side, the only course for her counsel on this appeal is to endeavor to find some error in the proceedings in the trial court which will justify a remand for a new trial. He brings us a brief of thirteen points in that endeavor. We shall not discuss all of them although all have been thoroughly examined.

Complaint is made that the trial court gave an incorrect charge on the subject of negligence. This charge was a point asked for by the defendant and was read by the judge with the comment "that point is affirmed." The language complained of reads as follows: "A manufacturer is held by law to no higher degree of skill than the fair average of his profession or trade and the standard of due care is the conduct of the average prudent man."

■ This point is badly phrased and it would have been a good thing if the judge had refused it. There is no such thing as care in the abstract. It is hornbook law that the care to be taken in any situation is that reasonable "under the circumstances." The second part of the point is at least theoretically inconsistent with the first part. The second part seems to put the standard as that of the average prudent man while the first part seems to put it on the general standard of manufacturers.

This court had occasion to deal with the Pennsylvania rule as to the standard of care in Diesbourg v. Hazel-Atlas Glass Company, cited above. No object is gained by repeating again what was said there.

■ In spite of the fact that we do not care much for this three-line statement which the defendant got the judge to "affirm" prior to his own charge to the jury in the case, we are not going to order a reversal on account of it. When the trial judge reached the subject of negligence in his own charge to the jury, he covered the matter in a highly satisfactory way. The charge was correct and it was adequate.[1] And on the precise point under discussion

---

1. The portion covering this point seems worth setting out. It is as follows:

"You should not infer negligence from the mere happening of an accident. The mere fact that the bottle broke or exploded is no evidence of negligence. The fact that the bottle broke or exploded due to negligence of persons other than the defendant company is no evidence that the defendant company was negligent.

"Negligence is generally defined as the lack of due care under the circumstances. It consists in doing something that a reasonable and prudent manufacturer of glass bottles, or its employees, would not do under the circumstances, or in not doing something a reasonable and prudent manufacturer of glass bottles or its employees would do under the circumstances.

"In this connection, the character of harm likely to result from the failure to exercise care in the manufacture of glass bottles affects the question of what is reasonable care under the circumstances. Whenever a manufacturer makes bottles for the purpose of containing carbonated beverages, to be used and handled by other persons, it has a duty to use ordinary care and skill in making the bottles. If the manufacturer failed to exercise ordinary care and skill in making these bottles, or inspecting them after they were made, you may find negligence from the presence of a defect.

"The defendant is required to exercise reasonable care in manufacturing its product, since if it is carelessly or defectively manufactured it is likely to cause substantial harm to those who use it in the manner for which it is manufactured. Even if the defendant used scientific and up-to-date methods in the manufacture and inspection of bottles, so as to eliminate any defects in its production, and nevertheless such a defect occurs, you might find existence of the defect is due to carelessness or negligence, either in the manufacturing or inspection process. And if you so find, the defendant would be liable to a member of the public injured thereby.

"Now, in view of all of the circumstances attending the production and inspection of the bottle in this case, the question is: Was there a defect in this

the court said: "Even if the defendant used scientific and up-to-date methods in the manufacture and inspection of bottles, so as to eliminate any defects in its production, and nevertheless such a defect occurs, you might find existence of the defect is due to carelessness or negligence, either in the manufacturing or inspection process."

The charge covered more than twenty-five typewritten pages. In view of the complete and correct exposition of the requisite standard of care which the judge himself gave, we think it would be absurd to reverse for having preceded it with a three-line statement which is at worst equivocal.

■ The plaintiff also complains that the judge charged the jury on contributory negligence and that he should not have done so because there was no evidence of contributory negligence in the case. This criticism comes with bad grace from the plaintiff's counsel. There were in evidence some statements made by other school children who were present in the cafeteria at the time of the accident. Some of the things said in these unsworn statements did not accord with fact statements made by the same youngsters when depositions were taken under oath sometime later. The first statements perhaps tended to show contributory negligence on the part of Susie Sanders. They were not admissible for this general purpose but only to impeach sworn testimony given later. But at the trial it was taken for granted that they were admissible generally. The plaintiff made no complaint at that time. Furthermore, the subject matter was discussed between counsel and the court after the jury had received instructions and retired. The court expressed his desire to have the matter correctly left to the jury. Counsel for the plaintiff, however, told the

court he did not want to risk opening up the question again. He certainly cannot do so now. See Rule 51, F.R.C.P., 28 U.S. C.

■ What the court said about contributory negligence was accurate and fair and went fully into the question of whether a child of Susie's age could be guilty of negligence and all the rest of the precautions which are taken with regard to contributory negligence in children. The very most that could be said in criticism of the charge was that it was gratuitous. The plaintiff is not in a position to complain of this.

■ The plaintiffs make objections to some of the defendant's expert testimony. The case was one in which each side used experts. This was correct, for the subject matter was "so far removed from the ordinary pursuits of life, that accurate knowledge * * * can only be acquired by continued study and experience * * ."[2]

■ Plaintiff's counsel complains that one of the defendant's experts was permitted to give an account of certain laboratory experiments in which the expert broke bottles and observed fractures. This, it is argued, was wrong because the experiments were not made under the same conditions as those surrounding the breaking of the bottle which hurt Susie Ann Sanders. But the plaintiff's own expert witness testified that he, himself, had conducted a series of tests earlier "to determine fracture patterns that are to be obtained by the different types of breaks." In other words, the plaintiff's expert had done the very thing that defendant's expert had done. Surely it is not improper for experts to base their professional opinions on experiment rather than armchair observation as to the nature of glass. The extent to which detailed examination should be allowed to

bottle, resulting from its manufacture, and was the defendant company negligent in permitting it to escape detection by its inspectors?

"There is a further requirement to be made in establishing negligence, and that is that the negligence must be such that the defendant, using ordinary caution and prudence, should have foreseen that some

injury or damage would probably arise from the manufacture of a defective bottle and could reasonably have expected some one to be injured, although the particular injury to this plaintiff need not have been foreseen."

2. Coyle v. Commonwealth, 1883, 104 Pa. 117, 131.

go in laying the foundation for the expert opinion is a matter for the discretion of the trial judge.[3]

Another complaint made of the defendant's expert is that he gave some testimony that the bottle fragment, found several hours after the accident, was in the same condition as it was at the time of the breaking. It is not claimed by plaintiffs that this is not a proper subject for expert opinion. But it is claimed that since there was testimony which might be interpreted to say that the bottle fragment as found did not look the same as the bottle fragment immediately after the accident, the expert should not be allowed to base an opinion upon an assumption contrary to the other testimony.

This confuses what the expert knows as expert, and the facts to be given to the expert on which to base an expert opinion. We think it would not be disputed that a surgeon who had performed an autopsy could be allowed to testify that a man died from lead poisoning even though eye witnesses said they had seen him hit and knocked down by the defendant using a club. The surgeon knows the cause of death as an expert. So here, the condition of this glass fragment is a subject for expert knowledge and there was no error in allowing the witness to testify about it. It is where the witness is asked to draw an expert opinion based on a hypothetical set of facts that the hypothesis has to be in accordance with the testimony.[4]

With regard to the expert, one more alleged error is asserted. The defendant asked one of its witnesses whether the concern he worked for competed with the defendant. He said it did. Whether this extraneous excursion into outside affairs should have been permitted the defendant in order to strengthen the credibility of his witness, we need not discuss. The plaintiff's counsel wanted to ask the witness whether it was not true that the company he worked for had been prosecuted for violation of anti-trust statutes. This the court refused, and rightly. Even if the answer to the question were yes, it did not prove that the two companies were not competitors unless the inquiry were followed up and further questions asked as to what was the basis of the anti-trust charge. Then that would have to be followed by further information as to whether the charge had been proved. It would not take long to turn the trial of this personal injury case into an investigation of the relationship between two glass companies. That is why great discretion is lodged in a trial court with regard to an inquiry into

3. Professor Wigmore discusses at length the general proposition that any witness may be asked the grounds or basis of his knowledge. 2 Wigmore on Evidence § 655 (3d ed. 1940). This is particularly applicable to the opinions of experts, and indeed is often a requirement. Id. at § 562.

The trial court's discretion is generally determinative of the admissibility of so-called out-of-court experiments. Navajo Freight Lines v. Mahaffy, 10 Cir., 1949, 174 F.2d 305; Snowiss v. Firemen's Ins. Co. of Newark, 1936, 322 Pa. 161, 185 A. 260. See the discussion of experiments in Wigmore, op. cit. supra at § 445.

4. See Wigmore, op. cit. supra, §§ 672–680. The premises upon which an expert opinion is based must of course be in evidence, for without them the opinion may be meaningless or irrelevant and incapable of being fairly judged by the jury. But the premises may be supplied by the expert himself if he observed or otherwise has knowledge of them. It is only where necessary premises are beyond the expert's knowledge that they must be supplied by other testimony. In such cases this evidence must be assumed to be true by the witness, and his opinion must be based thereon.

In the case before us, for instance, the expert's opinion would vary depending on the size of the original broken piece, a fact of which the expert had no knowledge. Evidence of this was supplied by eyewitnesses, and the expert stated that his opinion was based on the truth of that evidence. But the other facts in issue, as whether the piece had been broken again, were all matters of which the expert had knowledge, from observation, experience, and experiment. Insofar as these facts operated as a premise of the expert's further opinion that the bottle had been broken by impact, they were premises to which he could testify from his own knowledge.

material collateral to the case on trial.[5] The discretion was not improperly exercised here.

While other points are alleged in the argument for reversal, we do not find that they have merit or require discussion. The case was submitted to the jury under a thorough and fair charge by the court. The plaintiff was permitted a very considerable latitude in his introduction of testimony. There is no ground on which the jury finding can properly be upset.

The judgment of the district court will be affirmed.

5. 1 Wigmore on Evidence § 16, § 39 (3d ed. 1940). Even where, as here, the collateral inquiry is proposed to impeach a witness, the trial judge may in his discretion forbid it. 3 Wigmore on Evidence § 1003.