Stephen B. KUZMA, Appellee,

v.

**UNITED STATES RUBBER COMPANY,**
a Corporation, Appellant.

No. 14207.

United States Court of Appeals
Third Circuit.

Argued June 5, 1963.

Decided Oct. 22, 1963.

Gilbert J. Helwig, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellant.

John E. Evans, Jr., Pittsburgh, Pa. (Evans, Ivory & Evans, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Defendant appeals in this personal injury case from the entry of judgment in favor of plaintiff and the denial of its motions for judgment n. o. v. or, alternatively, a new trial.

Plaintiff, a grinding wheel operator in the hot roll shop of Jones & Laughlin Steel Corporation (J. & L.), was injured when an abrasive wheel manufactured by defendant disintegrated while being used by him. Plaintiff's cause of action was predicated on defendant's negligence and breach of warranty in the manufacture and sale of its wheel to plaintiff's employer. The defense was based on the contributory negligence of plaintiff in running the wheel at a speed in excess of the maximum rated speed that defendant had stenciled on its wheel. The jury returned a verdict of $20,000 and defendant has appealed to this court from the denial of its post trial motions.

At the time of his accident plaintiff was an employee with fifteen years of experience as an operator of a roll grinding machine in J. & L.'s hot roll shop. His duties consisted of grinding down the large rolls used in the steel making operations of J. & L. in order to remove the bruises and marks which develop on the rolls in the course of their use. This regrinding is done by the use of an abrasive grinding wheel which is machine mounted and controlled by a variable speed motor. The different speeds of the wheel are controlled by a rheostat that, at the time of this accident, was only calibrated by marks at each quarter. Plaintiff was using a 36″ rubber bonded wheel on the day of his injury, the first wheel of its kind to be utilized in J. & L.'s hot roll shop. Prior experience had demonstrated that resinoid or shellac bonded abrasive wheels were best suited for this type of work. However, defendant's salesman, Cornelius, had persuaded plaintiff's foreman to try out its 36″ rubber bonded wheel on the representation that the prior drawbacks of rubber bonded wheels had been corrected and that this new wheel had been "hardened up" and would do a satisfactory job. It was during the trial run of the defendant's wheel that the unfortunate accident occurred.

Defendant's first assignments of error are directed to the testimony of plaintiff's expert witness, Venable. It contends that the court below erred in permitting him to "speculate" at length concerning the cause of the accident and testify to several facts without an adequate factual foundation.

At the trial defendant very ably argued that Venable was not qualified to testify as an expert witness concerning the structure, components, or manufacture of abrasive grinding wheels. After both parties had conducted a careful and extended examination of the witness' qualifications in this field defendant's objection on the point was overruled by the court. When it later raised the same objection as one of the grounds in support of its post trial motions it was again overruled. Defendant does not challenge the ruling but instead it is now in the position of raising specific objections to the testimony of Venable that, with one exception, were not presented to the trial court. The general rule, of course, is that alleged errors in a jury trial which are not brought to the attenion of the trial court will not be considered on appeal. United States v. Atkinson, 297 U.S. 157, 56 S. Ct. 391, 80 L.Ed. 555 (1936). In any event, we find no merit in the present objections since, for the most part, they represent nothing more than dissatis-

faction with the opinions that plaintiff's expert gave contrary to the views of defendant's witnesses.

 Defendant is primarily disturbed by Venable's testimony that in his opinion the specific grinding wheel in question was damaged during its manufacture.[1] Initially, it stresses that Venable knew nothing about the manufacture of the specific wheel, the implication being, therefore, that this fact vitally affected the factual basis for his opinion.[2] As a practical matter, such an absence of "personal" knowledge is found in most personal injury cases of this nature, and is a factor properly addressed to the qualifications of the witness offered as an expert on the subject. More fundamentally, defendant contends that the expert's opinion that the wheel was damaged in the course of its manufacture was mere speculation and conjecture. We cannot agree that the trial court abused its discretion in this respect, for, though scant, there was some factual basis from which Venable could infer that the wheel was damaged. According to the manufacturing specifications of defendant there were to be three steel safety rings set in the wheel during its manufacture, whereas an examination of the wheel fragments by the expert witness after the accident revealed that the third ring was missing and in its place a hard plastic material substituted. Venable's analysis of the wheel fragments revealed that the third ring had originally been placed in the wheel during the manufacturing process but had been removed or broken out at a later point. This conclusion was corroborated by defendant's own witness. The reason for the absence of the ring there-fore became a highly significant trial factor.

 It was in light of the above circumstances, as well as his own expert knowledge of the compression molding process and his examination of defendant's molding instructions and inspection reports that Venable gave his opinion of why the third safety ring had been removed from the wheel. In essence, he concluded that in the course of removing the wheel from the mold while it was still in a brittle state a portion of the wheel containing this ring broke and in repairing the break the ring space was filled with the plastic material. The explanation offered by defendant for the ring's removal differed materially. The conflict, however, was for the jury to resolve, c. f. Sanders v. Glenshaw Glass Co., 204 F.2d 436, 440 (3 Cir., 1953).

 Defendant next complains that the opinion of plaintiff's expert that the grinding wheel contained less sulphur— the wheel's vulcanizing agent—than was required by the specifications was also without adequate factual support. We note again that defendant is raising an objection for the first time on appeal. In any event, this contention is of no real significance. Defendant analyzed a few of the wheel fragments recovered after the accident and found a lower percentage of sulphur in these samples than called for by the original formula. On the basis of defendant's finding and Venable's personal knowledge of what he considered to be the usual procedure in writing up that type of report which contains figures differing from the original specifications, Venable concluded that an insufficient quantity of binder was put in the wheel. While we might

1. We note that during the discussion between counsel and the trial court concerning plaintiff's offer of proof with respect to his expert witness plaintiff's counsel stated that, inter alia, he was going to show, through this witness, that the wheel was damaged in the process of its manufacture. In response thereto, counsel for defendant conceded that he had no objections to the witness' testimony in this area provided he was first qualified to so testify.

2. This is a refinement on the argument that a witness with no practical experience in the specific industry involved in the litigation should not be qualified as an expert. See Trowbridge v. Abrasive Co. of Phila., 190 F.2d 825, 829 fn. 9 (3 Cir., 1951).

feel that this conclusion was incorrect and that defendant's explanation for the difference between the figures was more reasonable, we cannot say that there was no factual support for Venable's opinion.

Defendant raises two final objections to the testimony of plaintiff's expert witness. First, it suggests that the court erred in permitting Venable to testify concerning the different sizes of wheel fragments that result from a wheel failure caused by overspeeding and a wheel that breaks because of a defect. Second, that Venable should not have been permitted to testify to the ordinary operating speeds of grinding wheels. The nub of the objections is that Venable was not qualified to speak as an expert in these instances. Having in mind defendant's admission that it is not now attacking the qualifications of this witness, no further discussion is needed as to these points.

Defendant argues, as a further ground for reversal, that the court below erred in denying defendant's motion for judgment n. o. v. or, alternatively, a new trial, when the evidence unequivocally demonstrated that plaintiff was contributorily negligent in operating the grinding wheel in excess of its maximum rated speed and in disregard for his own safety.

■ It is well established under the applicable Pennsylvania law that " '[i]t is only in those cases where contributory negligence is so clearly revealed that fair and reasonable individuals would not disagree as to its existence that it may be declared judicially.' * * * 'It is only in clear cases where the facts are undisputed and but one inference can be drawn from them that courts can declare as a matter of law a party guilty of contributory negligence * * *.' " Thorton v. Aronoff, 279 F.2d 39, 40 (3 Cir., 1960). And as we noted in Thorton, supra, 279 F.2d at 40, a finding that plaintiff is contributorily negligent as a matter of law is a severely limited ex-

ception to the general rule that this question is for the jury.

■ Our study of the record convinces us that the question of plaintiff's alleged contributory negligence was properly submitted to the jury. The evidence favorable to plaintiff shows that: Plaintiff was instructed by his foreman, Braemer, to put on defendant's new grinding wheel in order to check its performance. He was to use the wheel in a normal operation, and, in the same manner as he would use any other wheel, produce a finished roll by going through the usual processes of roughing, shaping and finishing. Although Braemer initially had been skeptical about whether the 742 r.p.m. rated speed of defendant's wheel was high enough for their normal use at J. & L. he made no mention of his doubts to plaintiff. He failed to warn plaintiff about overspeeding before the latter began his work, though he knew that the grinding wheel operators in the plant were accustomed to use higher speeds in excess of a wheel's rated maximum. Furthermore, the minimum speed at which plaintiff's Mesta machine would be normally operated in the course of grinding a roll was around 700 r.p.ms. and the resinoid bonded wheels which plaintiff customarily used had maximum speed ratings of from 890 to 1010 r.p.ms. when they were new.[3]

These facts alone might be sufficient to raise a jury question as to plaintiff's alleged contributory negligence. They provide a general background to this situation that shows that plaintiff was ordered to use defendant's wheel in a normal operation that might "normally" mean taking it up through speeds of 890 to 1000 r.p.ms.; he had no knowledge of the very limited speed capacity of the wheel he was told to use in the usual manner; and on the admission of his foreman, no mention of overspeeding "or anything like that" was given him before he started his operation (even

3. As the wheel becomes worn down through usage its surface feet area is decreased and correspondingly the wheel can be safely operated at a higher speed.

though Braemer, himself, had reservations about the wheel's speed capabilities). In effect, the jury could find that plaintiff was ordered to operate defendant's wheel, but he was never told that it had to be operated at a speed lower than those at which the operators were accustomed to running grinding wheels on this machine.

Plaintiff's evidence concerning the specific events surrounding the accident itself also clearly establishes that the issue of contributory negligence was for the jury to decide. His foreman, Braemer, instructed him to follow his normal operating procedure once he had defendant's wheel on the machine. Accordingly, plaintiff proceeded to do the "roughing" operation on the roll with the rheostat positioned between a quarter and one half: that setting was in line with the standard operating procedure in the shop. The operation was interrupted once in order to allow his superior to check to see how much steel plaintiff had taken off the roll. Braemer was satisfied that the roll had been taken down enough, so he told plaintiff to go on to the second, or "shaping", phase of the job. The rheostat setting at this point was approximately one half, or 6:00 o'clock, which, again, was the normal operating position. Plaintiff testified that, at this point, he informed defendant's agent, Cornelius, that he was going to increase the wheel's speed a little bit more in order to "finish" or polish the roll. By plaintiff's account, Cornelius made no comment to this, but merely followed plaintiff's suggestion that he move from the machine and started to walk away. Plaintiff then began slowly increasing the wheel speed until, when the rheostat was a "little past half, not quite three-quarters", a rumbling noise started. He "knew something was happening" and "just that quick" started to reduce the wheel's speed when it disintegrated.

Much of the trial examination was concerned with translating the testimony relating to the rheostat settings used by plaintiff into specific wheel speeds in order to relate them to the maximum rated speed of defendant's wheel. Plaintiff's initial testimony, however, was always couched in terms of his machine's uncalibrated rheostat settings—one-quarter, one-half, etc.—for this was evidently the shop practice and normal approach to the job. He testified that he did not know what the precise speeds were at the various rheostat positions. Actually, at an earlier point in his examination he stated that although the different grinding wheels he had seen in his years of work included wheels with maximum speeds of 690, 700, 800, 900 and 1000, the operators "operated them all practically the same" no matter what the wheel's maximum rated speed was and he "was never taught any different". Our examination of the evidence relating to the specific wheel speeds at which plaintiff was said to have been operating also satisfies us that there was evidence favorable to plaintiff's position that he was not contributorily negligent in the manner in which he operated defendant's wheel. This evidence, when considered against the background of the shop practices and training of plaintiff indicates that more than one inference could be drawn from these facts on the crucial point of plaintiff's conduct.

■ On balance, there was sharply conflicting testimony on many points, such as the speed at which plaintiff was operating the wheel and the warnings, if any, he was alleged to have been given about running his wheel too fast once he had started his grinding. The disposition of those disputed facts was properly left to the decision of the jury. With respect to the district court's denial of defendant's alternative motion for a new trial we find no error. The court rightly exercised its judicial discretion in a delicate area that borders on the prime jury function. If we were sitting as a fact finding tribunal we might well disagree with the jury verdict but the circumstances here presented certainly do not justify the exer-

cise of our power of appellate review. Lind v. Schenley Industries, Inc., 278 F.2d 79, 80 (3 Cir., 1960).

The judgment of the district court will be affirmed.