C. F. CHURCH DIVISION OF AMERICAN RADIATOR AND STANDARD SANITARY CORPORATION, a Delaware corporation, Plaintiff in Error,

v.

Paul GOLDEN, as guardian of Randy Darryl Perkins, an infant under the age of 3 years, Defendant in Error.

No. 41213.

Supreme Court of Oklahoma.

May 29, 1967.

Rehearing Denied July 11, 1967.

Ross, Holtzendorff & Hurd, by James H. Ross and Jay R. Bond, Oklahoma City, Loeffler & Allen, Bristow, for plaintiff in error.

Turner Primrose, Norman, and Rucker, Tabor, Shepherd & Palmer, by Truman B. Rucker and O. H. "Pat" O'Neal, Tulsa, for defendant in error.

DAVISON, Justice.

This litigation arises out of injuries sustained by Randy Darryl Perkins, age 18 months, when a fire occurred in the bathroom at the Perkins resident in the City of Norman, Cleveland County, Oklahoma, on November 14, 1961. The parties will be referred to herein as they appeared in the trial court. Randy Darryl Perkins will sometimes be referred to as "Randy" and the defendant will sometimes be referred to as "Church."

The defendant is engaged in the manufacture, sale and distribution of toilet seats throughout the United States and the State of Oklahoma. Plaintiff contends that the defendant was negligent in manufacture of a toilet seat installed in the bathroom of the Perkins home in the City of Norman, in that the seat was covered with plastic material containing a highly inflammable prod-

uct known as "cellulose nitrate" or "nitro cellulose," causing a fire in the bathroom of the Perkins home and resulting in extremely serious injuries to the minor plaintiff.

The defendant in its answer denied negligence, contends that all conditions with reference to the use of the toilet seat were open and obvious and that the incident was an unavoidable accident.

Upon the issues made by the pleadings the case was tried to a jury in the Superior Court of Creek County, Oklahoma.

Randy Perkins was alone in the bathroom. He was too young to use the toilet seat and had toddled into the bathroom. His mother did not know he was in the bathroom until she heard him cry. A lighted wall radiant gas heater located about eighteen inches from the toilet was lighted at the time the fire occurred. The toilet seat was submitted in evidence and appeared to be burned and scarred.

Plaintiff submitted no direct evidence as to the cause of the fire. The mother testified that she did not know "how this toilet seat got on fire."

The toilet seat had been installed in the house at the time it was built in April, 1950, and had been in continuous use for more than eleven years at the time the fire occurred. The mother testified it was "just an ordinary toilet seat."

The vital issue of fact presented to the jury involved the flammability of the product known as cellulose nitrate. Plaintiff submitted the testimony of several experts establishing the product to be highly inflammable. Defendant submitted the testimony of experts establishing the product to be only slightly inflammable. This issue was submitted to the jury under proper instructions not excepted to by either of the parties with the exception of the instruction on unavoidable casualty. The jury returned a verdict in favor of defendant.

Plaintiff filed a motion for new trial but does not argue in this court that the motion for new trial should have been granted on any grounds other than those specified by the trial court in sustaining the motion for new trial.

The trial court sustained the motion of the plaintiff for a new trial and this appeal is prosecuted from his decision.

In sustaining the motion of the plaintiff the trial judge stated his reasons as follows:

"1. The court could not conscientiously approve the verdict.

"2. Erroneous admission of exhibits, same being pieces of toilet seats that experiments had been performed upon by the defendants, and no evidence was presented of the seat's chemical contents or the conditions under which the experiment had been made.

"3. Error of the court in instructing on unavoidable accident.

"4. That the verdict was against the evidence and substantial injustices was done the plaintiff."

■ In his brief counsel for the plaintiff concedes that the trial court would not have been justified in granting a new trial for the reasons stated in 1 and 4. There is no merit to those two propositions. We have held in several cases that it is error for the trial court to grant a new trial upon the ground that he cannot conscientiously agree with the verdict of the jury and substitute his opinion for that of the jury. Cosmo Construction Company v. Loden, Okl., 352 P.2d 910; Neely v. Morris, Okl., 333 P.2d 301.

This leaves for our conclusion solely the correctness of the decision of the trial court in granting a new trial for the reasons stated in 2 and 4. These are the sole contentions presented in the briefs of the parties.

Reason 2 is as follows:

"2. Erroneous admission of exhibits, same being pieces of toilet seats that experiments had been performed upon by the defendants, and no evidence was presented of the seat's chemical contents or the conditions under which the experiment had been made."

The vital question for determination by the jury in this case was the flammability

or lack of flammability of a plastic known as cellulose nitrate. It was conceded by the defendant that the covering on the toilet seat involved contained this component. An officer for the defendant company testified that the defendant had used the compound in the manufacture of all toilet seats sold and distributed by it since 1919 and since 1940 had manufactured, sold and distributed more than four and one-half million toilet seats wherein cellulose nitrate had been used in processing the covering for the seats.

A number of chemists and other expert witnesses testified for each of the parties. These expert witnesses related the results of experiments made wherein they subjected cellulose nitrate to intense heat. In making these experiments the experts testifying for the plaintiff in some instances used small strips of material scraped from the toilet seat burned in the accident. In other instances raw cellulose nitrate in sheet form was used. One of the plaintiff's expert witnesses testified regarding experiments made on a toilet seat manufactured by the defendant after the accident occurred. The witness purchased the seat at a supply store in Tulsa, Oklahoma, comparable in chemical analysis to the seat in question; that he took an electric radiant heater and placed it 18 inches from the edge of the heater to the toilet seat; that within less than an hour, the seat had flashed and fired. Most of the experts testifying for the plaintiff testified that cellulose nitrate is highly inflammable.

The evidence objected to by the plaintiff was offered in connection with the testimony of two expert witnesses testifying for the defendant. One Dr. Otto Smith, the former head of the Department of Chemical Engineering and Geology, Oklahoma State University, the second, Allen Midyett, Jr., Director of Products Development and Engineering for defendant. Midyett testified that cellulose nitrate is used in processing the covering on all toilet seats manufactured and sold by the defendant.

Both of these experts testified concerning the results of a number of experiments made on certain toilet seats manufactured by the defendant in the normal production method with the use of cellulose nitrate in processing the covering. The toilet seats were cut up in blocks and portions of the covering removed from the seats.

Without objection on the part of plaintiff's counsel Dr. Smith testified concerning the flammability of strips of material removed from the seats. He explained that when the strips were suspended in the air vertically they ignited more quickly than when attached to a flat surface and that the seat if standing up vertically would burn more rapidly than when lying flat; that one strip hanging vertically in an oven ignited at 311 degrees Fahrenheit. Another sample of the seat covering attached to wood did not burn but charred at 410 degrees Fahrenheit. He testified that a heated red-hot wire placed on the material would not ignite it. While Dr. Smith was testifying from experiments as above related counsel for the plaintiff frequently made comments in the nature of cross-examination but did not object to his testimony. About the middle of Dr. Smith's testimony an objection was made that the material used by Dr. Smith was not shown to be of the same chemical content of the toilet seat in question.

Dr. Smith identified defendant's Exhibits 2, 3, 4, 5, 6, 7 and 8 and they were admitted in evidence over objection of plaintiff. All of these exhibits are portions of toilet seats manufactured by the defendants used by Dr. Smith in his experiments. He testified that Exhibit 2 is a portion of a toilet seat subjected to a heat of 400 degrees Fahrenheit for a period of two hours. The exhibit fumed and charred but did not blaze. Exhibit 3 involves a similar experiment. Exhibit 4 shows the extent of burning done to portion of the toilet seat when burning articles are applied to it, these being, a burning comb, a child's toothbrush, the toothbrush case, a lighted wood lead pencil, burning ball point pen, a crayola, and lighted matches. The exhibit shows the

damage done in each instance. Exhibit 6 shows the scarring done on a portion of the toilet seat when a small portion of a burning rag was dropped on the seat. The burning rag adhered to the toilet seat but the plastic covering did not catch fire. Exhibit 7 shows the effect of laying a lighted cigarette on the toilet seat. The cigarette burned its entire length but the covering on the seat did not burn. Exhibit 8 shows the effect on the lid of the toilet when the lid was standing vertically and a flame applied. Witness testified the flames reached a height of about eighteen inches.

Allen Midyett, Jr., testified to several experiments made in the factory of the defendant using toilet seats of approximately the same age as the one in question. Samples of the seats were placed in an oven and heated to a temperature of 320 degrees for a period of twelve hours and forty-five minutes. The samples became brittle, scaly and peeled but did not ignite. Witness purposely lit the scorched portions of the samples with a match and they would flame. Samples of toilet seats where the covering had been loosened with a knife were heated in an oven to high temperatures. The loosened edges peeled and curled. The material burned slightly but went out of its own accord. Witness placed cigarettes on samples of the toilet seats. They burned out without igniting the sample. Lighted matches were applied to the same. The sheeting ignited but went out of its own accord.

The witness repeated the experiments in the courtroom using plaintiff's Exhibit 3, same being toilet seat involved. He applied matches to plastic remaining on the seat. They went out after burning about three-eighths of an inch. At the request of counsel for the plaintiff the exhibit was turned upside down. The plastic covering was ignited with a match and burned for about thirty-five seconds. Plaintiff's counsel did not object to the experiment but complained that the toilet seat was being destroyed. The flame was extinguished by counsel's hand.

Portions of the evidence developed by defendant's experts is more favorable to the plaintiff than the defendant. At the trial the court admitted the testimony of the defendant's experts and the experiments made by them but sustained the motion for new trial on the theory that he had erred in so doing.

■ Plaintiff's entire case was predicated on the theory that the covering on the toilet seat in question contained a highly inflammable chemical known as cellulose nitrate. He offered the testimony of experts regarding experiments made in substantially the same manner as those made by defendant's experts. Under such circumstances it was not error to admit the evidence of defendant's experts on the point. Sanders v. Glenshaw Glass Co., C.C.A. 3, 204 F.2d 436.

■ One of the decisive questions for the jury to determine in this case was whether or not "cellulose nitrate" as used in processing toilet seat covers is highly flammable and dangerous. The evidence is undisputed that the defendant used "cellulose nitrate" in processing the covering on all toilet seats manufactured by it. Evidence developed by experiments involving this question is admissible without a showing that the experiments were conducted under conditions similar to those existing at the time of the fire in the bathroom. Chickasha Cotton Oil Co. v. Hancock, Okl., 306 P.2d 330.

It would have been impossible to conduct experiments under the exact conditions existing in the bathroom at the time of the fire. Such conditions were never established and could not be established. Plaintiff's experts testified from experiments made under similar conditions. The same is true concerning the experiments made by defendant's experts.

■ The law is well settled that for evidence of experiments made out of court to be admissible it is not necessary to establish that the experiments were conducted under identically the same conditions as

those presented at the time of the incident involved. The evidence is admissible if the experiments were conducted under similar or reasonably similar conditions to those presented in the transaction involved. The conditions under which experiments are made goes to the weight of the evidence but not to its admissibility. Chickasha Cotton Oil Co. v. Hancock, Okl., 306 P.2d 330; Rain v. Balph, Okl., 293 P.2d 359; Shepherd v. State, 51 Okl.Cr. 209, 300 P. 421; Irby v. State, 18 Okl.Cr. 671, 197 P. 526; Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co., C.C.A. 10, 257 F.2d 93, 76 A.L.R.2d 385; Sanders v. Glenshaw Glass Co., C.C.A. 3, 204 F.2d 436; Ley v. Bishopp, 88 Cal.App. 313, 263 P. 369; Guinan v. Famous-Players-Lasky Corp., 267 Mass. 501, 167 N.E. 235; James v. Bailey Reynolds Chandelier Co., 325 Mo. 1054, 30 S.W.2d 118.

In 32 C.J.S. Evidence § 546(70), p. 282, it is stated:

"A chemist, whose legitimate profession is to inquire into the nature and properties of matter and of a combination or union between the elements of which different substances are composed, is logically the most competent witness regarding the constitutents of compounds, and his opinion may be received, although based entirely on experiments in his laboratory, * * *"

The evidence relating to experiments made by defendant's experts was properly admitted at the trial. The trial court erred in granting a new trial on the grounds that such evidence was improperly admitted.

The third reason given by the trial judge for granting a new trial is as follows:

"Error of the court in instructing on unavoidable accident."

Plaintiff does not contend that the instruction submitting the defense of unavoidable casualty to the jury is an inaccurate statement of the law. He urges that the facts presented in the case do not justify the submission of the issue of unavoidable casualty to the jury.

Defendant in its answer denies negligence and also pleads the defense of unavoidable accident.

■ This court has held in several cases that where the defense of unavoidable accident is pleaded in the answer of the defendant and the evidence introduced at the trial would justify a decision on such issue it is the duty of the trial court to submit the issue to the jury under a proper instruction. Lucy v. St. Louis-San Francisco Ry. Co., Okl., 386 P.2d 156; Wofford v. Lewis, Okl., 377 P.2d 37; Ries v. Cartwright, Okl., 297 P.2d 367; Fuller v. Neundorf, Okl., 278 P.2d 836; Huey v. Stephens, Okl., 275 P.2d 254; Rowton v. Kemp, 190 Okl. 558, 125 P.2d 1003; Wilson v. Roach, 101 Okl. 30, 222 P. 1000.

■ The evidence presented in this case justified the trial court in submitting the instructions on unavoidable casualty to the jury. No direct evidence was introduced as to the cause of the fire in the bathroom. Plaintiff built his case entirely on circumstantial evidence. His theory was that the cellulose nitrate covering on the toilet seat caught fire either from the heat of the radiant gas heater or from a burning pencil in the hands of the infant plaintiff. He offered no positive evidence that either of these incidents occurred.

The evidence established that cellulose nitrate is used in the manufacture of many products besides toilet seats. Some of these are Ping-pong balls, combs, playing cards, fabrics and as one of the components of many lacquers.

It was argued to the jury that there are many things used in the average household which will burn. Some of these are window draperies, paper, rubbing alcohol, bath towels, and all articles made of paper, cloth or wood.

■ The jury could have logically concluded that the fire in the bathroom occurred from an unknown source and therefore was the result of unavoidable casualty and misfortune. The trial court committed

no error in submitting the instruction on unavoidable casualty to the jury.

 We held in Hanna v. Parrish, Okl., 344 P.2d 658, quoted with approval in Cosmo Construction Co. v. Loden, Okl., 352 P.2d 910, that:

" 'Where it is determined that the trial court acted arbitrarily, clearly abused its discretion, or erred on some unmixed question of law in granting new trial, order granting new trial will be reversed.' "

The order of the trial court sustaining the motion for new trial of the plaintiff is reversed with directions to overrule the motion and re-enter judgment on the verdict for the defendant.

JACKSON, C. J., IRWIN, V. C. J., and BLACKBIRD, BERRY, HODGES, LAVENDER and McINERNEY, JJ., concur.