WRAY et al. v. GARRETT, Adm'x.

No. 29969. May 6, 1941.

*113 P. 2d 367.*

Sam L. Wilhite, of Anadarko, for plaintiffs in error Otto Wray and Emmitt Meeks.

James C. Cheek, of Oklahoma City, for plaintiff in error Employers Casualty Company.

Fred E. Suits, of Oklahoma City, Roy H. Steele, of Altus, and Grady Lewis, of Washington, D. C., for defendant in error.

HURST, J. Mae Garrett, administratrix of the estate of Charles I. Garrett, deceased, brought this action to recover for the death, and attendant pain and suffering, of the deceased, alleged to be due to the negligence of defendants Wray and Meeks. The deceased was killed in a collision between an automobile driven by him and a truck belonging to defendant Wray and driven by Meeks. The defendant Employers Casualty Company was surety for Wray upon a motor carrier's bond. The cause was tried to a jury, and from a verdict and judgment against them, defendants appeal.

This is the second time the case has been before this court, the first appeal

(Wray v. Garrett, Adm'r, 185 Okla. 138, 90 P. 2d 1050) resulting in a reversal of a judgment for plaintiff because of the improper admission of evidence. The collision in which deceased was killed was the same as that involved in Wray v. Ferris, 187 Okla. 428, 103 P. 2d 942, 128 A. L. R. 1079, both Garrett and Ferris having died from injuries received therein. The decisions in those cases largely settled the legal questions arising from the nature of, and circumstances surrounding, the collision, and on this appeal only two questions are presented: (1) Whether the evidence is sufficient to sustain the verdict, and (2) whether there could be a recovery by plaintiff on behalf of Mary Garrett, a daughter of deceased, who reached her majority some eight months after his death, but prior to the trial of the cause. These questions will be disposed of in order.

1. The collision occurred about 9:30 o'clock a. m., on a bridge approximately eleven miles east of the city of Lawton. Deceased and Ferris were traveling east in a coupe, and Meeks was proceeding west in a truck, to which was attached a semi-trailer heavily loaded with gasoline and kerosene. The bridge was narrow, and on each side at some distance therefrom was a large sign warning travelers that it was a "one-way" bridge. The highway at that point, and for a considerable distance on each side of the bridge, was straight, running east and west, and there was no obstruction to prevent travelers approaching the bridge from either side from observing the approach of those coming from the opposite direction. The highway east of the bridge was practically level. West of the bridge the highway was level for a short distance, then sloped gradually upward over a knoll or small hill, the crest of which was some 1,820 feet from the west end of the bridge. The weather was slightly foggy, but apparently the visibility was good. The actual point of collision was approximately 40 feet west of the east end of the bridge. The bridge was 158 feet long, so that when the collision occurred the coupe driven by deceased had crossed approximately three-fourths of the bridge. At the trial, photographs, maps, and a toy truck and toy automobile were used to present to the jury the condition of the bridge before and after the collision, and the position of the coupe and truck, and the condition of the coupe after the collision, and the contour of the highway for a considerable distance on each side of the bridge. The truck driver, Meeks, was the only survivor of the accident, and the only eyewitness thereof. He testified the collision was due solely to the coupe being driven upon the bridge at a high rate of speed after he had driven his truck upon it and was proceeding across at a speed which at the time of the collision he testified was about two miles per hour. His evidence controverted that of plaintiff, who produced testimony as to marks upon the highway and bridge which tended to show that when or just before Meeks reached the bridge, and from the east end of the bridge to the point of collision, the brakes on the truck had been applied with sufficient force to lock the wheels, causing them to skid, and also of a mark on the wooden floor of the bridge, tending to show that after the collision the coupe had been dragged for six or eight feet. When the vehicles stopped, the coupe was facing north, its front end against and partly under the trailer of the truck, and its rear end against the iron railing of the bridge. The truck and trailer were on the north side of the bridge, and the right rear wheel of the truck was pushed through the iron lattice of the bridge rail, and was resting upon a concrete pier which supported the bridge.

A witness named Baxley, who was traveling west on the highway some distance behind the truck, testified that he saw the coupe come over the hill or rise some 1,820 feet west of the bridge. He testified that at that time the truck was in his judgment near a culvert some 1,100 feet east of the bridge. Meeks stated that he saw the coupe come over the crest of the hill when he reached the "one-way bridge"

sign 630 feet·east of the bridge, at which point he was traveling at the rate of 25 miles per hour, and that he slowed his speed so that when he entered the bridge he was traveling about 12 miles per hour.

We think the evidence of the plaintiff showing that the coupe was almost across the bridge when the collision occurred, and of the marks on the bridge and highway which tended to prove that the truck had skidded for some distance with locked wheels and that the coupe had been dragged or forced back some six or eight feet before it had been wedged between the truck and the bridge rail, together with the testimony of the witness Baxley as to the relative distance of the truck and the coupe from the bridge when he first saw the coupe, were sufficient to make a prima facie case. While the evidence was wholly circumstantial, an inference could be reasonably drawn therefrom that the defendant Meeks drove the truck upon the bridge after Garrett had traveled part of the way across it, and that the speed at which the truck was traveling was such that the application of the brakes did not suffice to stop it in time to avoid a collision.

It is a settled rule in this state that negligence as well as the proximate cause of an accident may be established by circumstantial evidence and reasonable inferences to be drawn therefrom. Griffin Grocery Co. v. Scroggins, 145 Okla. 9, 293 P. 235. And where, from the competent evidence adduced, reasonable men might draw different conclusions as to the negligence of the party charged therewith, the question is for the jury. Padgett v. McKissick, 138 Okla. 63, 280 P. 409. And circumstantial evidence is sufficient to support the verdict, although it is contrary to the positive evidence offered by defendant. Marland Refining Co. v. Snider, 125 Okla. 260, 257 P. 797. The demurrer to the evidence and motion for directed verdict were properly overruled on this ground.

Defendant calls attention to the statement in Atchison, T. & S. F. Ry. Co. v. Phillips, 158 Okla. 141, 12 P. 2d 908, that a demurrer to the evidence in a personal injury action ought to be sustained unless it is reasonably apparent from the plaintiff's evidence that the injury sustained· was caused by some wrongful act of the defendant. Standing alone, the words "reasonably apparent" might perhaps be taken to mean that the evidence must be more than sufficient to sustain a reasonable inference of negligence. But a reading of the opinion discloses that the court adhered to the rule of reasonable inference.

2. In support of their contention that in the absence of specific evidence of pecuniary loss there could be no recovery on behalf of Mary Garrett, defendants cite Catto v. Maxey, 170 Okla. 356, 40 P. 2d 633, and other cases holding that in actions for wrongful death the presumption of substantial loss which is indulged as to the minor children of the deceased does not obtain as to adult children. This argument ignores the fact that Mary Garrett was a minor on the date of her father's death, and was entitled to the benefit of the presumption during her minority, because of the legal obligation to support and maintain her which rested upon her father during her minority. Tackett v. Tackett, Gdn., 174 Okla. 51, 50 P. 2d 293; 17 C. J. 1208; 16 Am. Jur. 208. Defendant did not request that the verdict be apportioned, and we are unable to say just how much the jury allowed Mary Garrett. The evidence showed that deceased was a farmer, in good health, with an earning capacity of from $1,800 to $2,400 per year, and a life expectancy of 16.72 years. The verdict of the jury on the first cause of action, which was for wrongful death, was $6,000. The verdict of $1,500 for conscious pain and suffering, on the second cause of action, and of $419 for hospital, medical, and funeral expenses, on the third cause of action, did not require proof of pecuniary loss to the·

dependents. We cannot presume, as defendant suggests, that the jury, if it had been required to apportion the $6,000, would have divided it equally between the widow and the daughter. Tackett v. Tackett, Gdn., supra. Therefore, we are unable to assent to the conclusion of defendant that the verdict is excessive in the sum of $3,000. It is not contended that the combined pecuniary loss sustained by the widow and daughter by reason of the death of Mr. Garrett does not equal the sum of $6,-000. The demurrer to plaintiff's evidence and motion for directed verdict, and the objection to the trial court's instructions, made upon the theory that there could be no recovery on behalf of Mary Garrett, were properly overruled.

As requested by the plaintiff, judgment is hereby rendered against the surety on the supersedeas bond for the amount of said judgment with legal interest.

Affirmed.

CORN, V. C. J., and RILEY, DAVISON, and ARNOLD, JJ., concur.