Daniel J. WOFFORD, Plaintiff in Error,

v.

Kenneth LEWIS, Administrator of the Estate of Lola Mae Lewis, Deceased, Defendant in Error.

No. 38969.

Supreme Court of Oklahoma.

Dec. 11, 1962.

As Amended Dec. 14, 1962.

Rucker, Tabor & Cox, Joseph M. Best, O. H. "Pat" O'Neal, Jr., Tulsa, for plaintiff in error.

Riley Q. Hunt, Jay, for defendant in error.

JACKSON, Justice.

In the trial court, plaintiff Lewis sued defendant Wofford for damages resulting from a "rear end" automobile accident in which plaintiff's decedent, his wife, Lola Mae Lewis, was killed. After the jury returned a verdict for defendant, plaintiff's motion for new trial was sustained, and defendant appeals.

The accident happened on State Highway 59 a few miles south of Jay, Oklahoma. Mrs. Lewis was a passenger in a car being driven by her father, Mr. Huff. A short distance behind the Huff car was a pickup truck driven by an unidentified person; and behind it was the car driven by defendant Wofford. All three vehicles were travelling south.

Mr. Huff and his passengers were on their way to the Huff home, which was on a country lane or driveway which extended at an angle to the left, or east, of the highway.

At a point just north of this turnoff, where the highway was straight with visibility unrestricted, in daylight hours and good weather, the defendant Wofford sounded his horn and began to pass the pickup truck on the left. He did not sound his horn again. As he neared the Huff vehicle, Mr. Huff started a turn to the left, intending to enter the country lane which led to his home. The Wofford car struck the Huff vehicle from the left rear when both were on the left (east) side of the highway, causing it to turn over, and causing the death

of Mrs. Lewis from the severe injuries she received. Neither vehicle was exceeding the speed limit.

There was testimony that Mr. Huff signalled a left turn for more than 100 feet before he began his turn; there was also evidence that he did not signal until immediately before beginning the turn.

There was undisputed evidence that Mr. Huff had been partially deaf for several years before the accident, and that his daughter, Mrs. Lewis, knew it. Mr. Huff testified that neither his wife nor his daughter cautioned him on the occasion of the accident, although "as a usual thing" they did try to help him because of his partial deafness.

In one of the trial court's instructions, the jury were directed, in effect, to return a verdict for defendant if they should find "that said accident was the result of an 'unavoidable accident', as the same is defined in these instructions * * *". In his other instructions, the court failed to define "unavoidable accident", but it does not appear that either party requested that the term should be defined.

The jury returned the following verdict:

"We, the jury, drawn, empanneled, and sworn in the above entitled cause, do upon our oaths find for the defendant. Unavoidable accident. Defendant not at fault."

In the absence of comment or complaint in the record and briefs, we assume that the words "Unavoidable accident" and "Defendant not at fault" were added by the jury to the form of verdict furnished them by the court.

The record shows that the trial court sustained the motion for new trial for three specific reasons. They were: (1) error in giving an instruction on unavoidable accident which was not justified by the evidence; (2) even if the instruction were properly given, error in failing to define "unavoidable accident"; and (3) error in the admission of certain hearsay evidence to be hereinafter noted.

In his brief on appeal, defendant Wofford (plaintiff in error) argues generally that the trial court did not err in giving the instruction on unavoidable accident and did not err in admitting the evidence which is criticized as hearsay. He concludes that the court's action in sustaining the motion for new trial was an abuse of discretion, and was arbitrary and capricious.

Since we have concluded that this case must be re-tried, we will consider both questions (unavoidable accident and hearsay evidence). It should be specifically noted at this point, however, that the specific question before us is *not* whether the court committed *reversible error* in giving the instruction or admitting the hearsay evidence. The real question is whether the court erred in a pure, simple and unmixed question of law, or acted arbitrarily or capriciously, in granting the new trial. Burke Greis Co. v. Ballard, 200 Okl. 341, 193 P.2d 582.

In its literal sense, an unavoidable accident is one that could not have been prevented by any means at all, and it may be argued as an abstract proposition that there is no such thing as an unavoidable accident. However, the literal meaning has never been ascribed to the phrase "unavoidable accident" in this jurisdiction. In Wilson v. Roach, 101 Okl. 30, 222 P. 1000, this court held:

"An 'unavoidable accident' is a casualty which occurs without negligence of either party, and when all means which common prudence suggests have been used to prevent it."

In Huey v. Stephens, Okl., 275 P.2d 254, we held:

"An 'unavoidable accident' is one which occurs while all persons concerned were exercising ordinary care, being one not caused by the fault of any of the persons, and if the accident could have been prevented by either person by means suggested by common prudence, it is not deemed unavoidable."

See also Tyree v. Dunn, Okl., 315 P.2d 782; Keltch v. Strunk, Okl., 295 P.2d 785; Cabe v. Langley, Okl., 348 P.2d 316.

An examination of these and other cases in which we have defined or discussed the phrase "unavoidable accident" discloses that this court has always deemed an accident unavoidable when it happened while all parties *to the lawsuit* were using the degree of care required under the circumstances, although we have not always so stated in the syllabus.

With that definition in mind, we now examine the evidence in the case before us. Insofar as the cause of the accident is concerned, it raises three issues of fact for jury determination: (1) whether defendant Wofford was negligent in failing to sound his horn again after passing the pickup truck and before passing the Huff vehicle, or in failing to keep a proper lookout; (2) whether Mr. Huff was negligent in failing to give a sufficient signal before starting his left turn; and (3) whether plaintiff's decedent, Mr. Huff's daughter, was negligent in failing to caution her father as she and her mother had usually done in the past because of his partial deafness.

Mr. Huff was not a party to the lawsuit and it is conceded that his negligence, if any, may not be imputed to his daughter.

■ Upon the three issues above noted, it is apparent that several combinations of findings of negligence, or concurring negligence, or lack of negligence, were possible. Suffice it to say *here* that if the jury should have found that the accident was due solely to the negligence of Mr. Huff, with no negligence on the part of either plaintiff's decedent or defendant, the unavoidable accident instruction would have been applicable.

In Keltch v. Strunk, Okl., 295 P.2d 785, this court held:

"Where, from portions of the evidence of both plaintiff and defendant when considered together, the jury might reasonably have concluded that neither the plaintiff nor the defendant were guilty of negligence proximately causing the accident, and that the accident could not have been prevented by either party exercising the care required of him as a reasonably prudent person, the issue of unavoidable accident is sufficiently presented that the trial court may properly submit the issue to the jury under an appropriate instruction."

See also Burton v. Harn, 195 Okl. 232, 156 P.2d 618, and Huey v. Stephens, Okl., 275 P.2d 254, to the effect that an instruction on the theory of unavoidable accident should be given in cases where the evidence introduced would *support* a finding that *neither party to the lawsuit* was negligent.

■ We therefore hold that under the evidence presented in this case it was not error for the trial court to give an instruction upon the theory of unavoidable accident.

■ In view of the fact that the term "unavoidable accident" is not used in this jurisdiction in its literal sense, we are of the view that when an unavoidable accident instruction is given it is the better practice to define the term. However, as heretofore shown neither party requested a definition of the term and under these circumstances we are unable to say that the trial court justifiably granted a new trial based upon this oversight.

We now consider the remaining reason given by the trial court for sustaining the motion for new trial. It concerned the admission, under the res gestae rule, of certain allegedly spontaneous declarations by a bystander identified only as the "lady in bermuda shorts". It appears that she may have been an occupant of the pickup truck which was between the Wofford and Huff vehicles immediately prior to the accident. Her name was not taken by the highway patrol trooper who investigated the accident, and she had not been further identified at the time of trial.

A witness for defendant testified that she "came up to where" the accident hap-

pened, apparently shortly after it happened. She observed a "lady in bermuda shorts" who was crying. She "went over and stood beside her". She further testified: "well, she just started telling me about the accident. * * * she said they were driving down the road and there was a car behind them and one in front, and, she said the car behind passed and the car in front of her suddenly pulled out in front of the car that had passed her. * * * She said she hated for her small children to see the accident. * * *"

The "rule of res gestae" in one of the well defined exceptions to the hearsay rule. 20 Am.Jur., Evidence, § 661.

"* * * Stated differently, the term 'res gestae' comprehends a situation which presents a startling or unusual occurrence sufficient to produce a *spontaneous* and instinctive reaction, during which interval certain statements are made under such circumstances as to show lack of forethought or deliberation in the formulation of their content. * * * whether a declaration is a part of the res gestae depends upon whether the declaration was *the facts talking through the party or the party talking about the facts.*" 20 Am.Jur., Evidence, § 662. (Emphasis supplied.)

■ The burden of showing that a statement offered in evidence is admissible under the res gestae rule is upon the party offering it. 32 C.J.S. Evidence § 418. Also, the question of the admissibility of statements as a part of the res gestae is largely determined by the facts and circumstances of each case, and should in great measure be left to the determination of the trial court. Huffman v. Gaylor, Okl., 267 P.2d 564; Sand Springs Ry. Co. v. Piggee, 196 Okl. 136, 163 P.2d 545.

With regard to the rule against hearsay evidence generally, it is said that the reason for the rule is that the unsworn statement of a person not called as a witness or subjected to the test of cross examination is not of sufficient probative force to raise an

inference that the fact is as stated. 31 C.J.S. Evidence § 193; 20 Am.Jur., Evidence, § 452. With regard to exceptions to the hearsay rule, it is said that

"* * * Most of the exceptions to the hearsay rule are based on the necessities of the case. If there is a possibility of obtaining testimony other than hearsay, the law does not generally permit the introduction of hearsay." 20 Am.Jur., Evidence, § 453.

Although we are aware of the theory that the "rule of res gestae" is not really the exception to the hearsay rule, but that evidence admitted thereunder is really "original evidence", such theory would seem to be more a matter of abstract reasoning than practical application. In the case before us, there can be no doubt that the statements of the "lady in bermuda shorts" come within the commonly accepted definition of hearsay evidence: "* * * evidence which derives its value, not solely from the credit to be given to the witness upon the stand, but in part from the veracity and competency of some other person." 20 Am.Jur., Evidence, § 451.

The facts in the instant case amply illustrate the wisdom of the above rules of law. The "lady in bermuda shorts" is otherwise unidentified, and could not be cross examined, or even interviewed. A total of six witnesses to the accident testified in this case, including two who were not passengers in either vehicle and not interested in the outcome of the case; there was therefore no necessity for admitting the statements of the "lady in bermuda shorts".

■ Upon the record before us, we cannot say that her statements were more than a mere narrative statement of past events, or that they possessed such a degree of spontaneity as to require their admission in evidence as a part of the res gestae. The trial court's determination, upon the motion for new trial, that they were not admissible under the res gestae rule, was therefore not an error in a pure, simple and unmixed question of law, and he did not

**42**

act arbitrarily or capriciously in granting the new trial.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., and DAVISON, IRWIN and BERRY, JJ., concur.

BLACKBIRD, V. C. J., and JOHNSON, J., concur in result.

HALLEY, J., dissents.