Mary E. GWINN, Plaintiff in Error,

v.

Billy John PAYNE, Defendant in Error.

No. 42233.

Supreme Court of Oklahoma.

July 14, 1970.

Rehearing Denied Dec. 22, 1970.

Sellers & Woodson, Sapulpa, for plaintiff in error; Joe A. Moore, Sapulpa, of counsel, on the brief.

Alfred B. Knight, Richard D. Wagner, Tulsa, for defendant in error.

DAVISON, Justice.

This appeal is presented by Mary E. Gwinn, plaintiff in error, as plaintiff in the trial court, against Billy John Payne, defendant in error, as defendant below. The parties will be hereinafter designated as they appeared in the trial court.

Plaintiff's action against defendant was for damages for personal injuries alleged to have been suffered by her, arising out of an automobile collision between the car (Volkswagen) driven by her husband in which she was a front seat passenger and the car (Pontiac) driven by defendant.

Plaintiff alleged that in the early part of the afternoon of the day of the collision she was riding as a passenger in a Volkswagen on a country road near Okmulgee City Lake in Okmulgee County; that the weather was rainy, and the road being of clay surface was slick; that the cars involved were being driven in opposite directions; that in meeting the car in which plaintiff was a passenger, defendant drove to the left of the center of the roadway into the lane of travel of plaintiff's vehicle and negligently collided with plaintiff's car. Plaintiff further alleged that defendant was guilty of negligence in that he drove his vehicle at a greater speed than was necessary under the circumstances, and greater than would allow the same to be stopped within the assured clear distance ahead; that the defendant crossed the center of the road when it was not safe to do so; that the defendant failed to keep a proper lookout and failed to keep his car under proper control.

Defendant answered by way of a general denial and then alleged that the sole and proximate cause of the accident was the condition of the roadway, which was the proximate cause of his car going to the left although he was driving at reasonable speed and upon the proper side of the road when he first saw plaintiff's car; that the collision and injuries were the result of an inevitable and unavoidable accident occurring through no fault of defendant.

Plaintiff by reply to defendant's answer denied that the collision was the result of an inevitable and unavoidable accident.

The trial resulted in a jury verdict in favor of defendant. The judgment based on the verdict has resulted in the present appeal.

For reversal plaintiff presents two issues, first that the trial court erred in refusing to direct a verdict against the defendant, and, secondly, that the court erred in giving an instruction on unavoidable accident.

For a determination of the above issues it is necessary to review the material parts of the evidence.

The evidence disclosed certain undisputed facts, to wit: that the accident happened on a country road in the vicinity of the Okmulgee City Lake in the forepart of the afternoon; that the road was 18 feet in width at the point of impact; that the road is in a wooded area; that the road is an upgrade to the west and turns toward the southwest; that the two cars were going in opposite directions at the time of the collision, the defendant's car traveling from the

west and plaintiff's car from the east; that there was a curve in the road almost immediately west of the point of impact; that the surface of the road consisted of gravel, dirt and clay; that both parties were sober; that the defendant and his family had gone to the lake on a picnic but soon after their arrival at the lake rain began to fall and the defendant with his family had started home; that at the point of the collision the road had become slick.

Art Hackney, the Oklahoma Highway Trooper who investigated the accident, testified that he arrived at the scene of the accident soon after it happened and that from his investigation the vehicles had not been moved from their point of rest following the accident; that he determined the point of impact between the vehicles was approximately two feet north of the center of the roadway (that being in Gwinn's lane of traffic); that the accident occurred about seven feet from the right side of the roadbed; that the slick roadbed would have a lot to do with the cause of the accident; that the vehicles came to rest at, or approximately, at the point of impact; that his notes made at the time of the investigation showed that both vehicles were traveling at a speed of 20 miles per hour at the time of the impact but did not remember if he got his information from the parties or whether the speed was calculated by his personal investigation.

Other pertinent questions were propounded to this officer and the following answers given:

"Q. Let me ask this question. If the vehicle stays at approximately the same point, or comes to rest after the accident where the collision occurred with reference to speed, what do they indicate to you, sir?

A. Their speed was pretty close together, if they come to rest approximately—say you have a head on collision they will come to rest approximately at the point of impact where you got both vehicles at the same speed. If one is doing fifty and the other five, then when they hit of course, it will go on. The one

that has the speed. If you have the same type vehicles.

Q. And, yet, is it not your opinion that where they stop at approximately the same place, they are going at approximately the same speed, except for the weight of the vehicle, the vehicle weighing less was the Volkswagen? (Objection overruled by the Court)

Q. Well, if vehicles are going at the same speed, Officer, a Volkswagen and a Pontiac are going the same speed, what would happen to the Volkswagen when they hit head-on?

Q. If you have a judgment?

A. I would say, if they are going at the same speed and if they hit head-on, then your Volkswagen would get the worst end of the deal. It would be knocked backwards. You have all of the weight of the Pontiac and the lightness of the Volkswagen."

\*     \*     \*     \*     \*     \*

"Q. With reference to this picture we have the problem here of visibility. How far you can see. Do you recall about the trees on both sides?

A. Well, yes, it's a wooded area.

Q. You can't see through the curve?

A. I believe that's right.

Q. Is that right?

A. Yes."

L. L. Gwinn, plaintiff's husband, testified that he was driving the Volkswagen at the time of the wreck; that he estimated his speed at between 10 and 15 miles per hour and estimated the speed of the defendant's car to be 30 to 35 miles per hour; that when the cars were approximately 25 feet apart defendant's car went into a rather severe skid and defendant had apparently lost control of his car after the skid; that defendant made some statement to the officer that the road was slick from the rain; that the impact occurred on his side of the road and the cars remained at the point of impact until after the patrolman had completed his investigation; that

witness was going up the incline and defendant was coming down the incline.

Plaintiff testified to the extent of her injuries; her hospitalization and loss of earnings attributable to the wreck, but did not remember how the accident happened and when asked the question as to whether defendant's car was sliding at the time of the accident answered, "I would be unable to answer that."

Other evidence offered by plaintiff consisted of medical testimony and hospital records.

The pertinent part of defendant's testimony when first placed on the witness stand as plaintiff's witness and later as a witness for himself was substantially, as follows:

That when he entered the curve his speed was not over 15 miles per hour; that he first saw the Volkswagen when the cars were about 25 feet apart; that he felt like his car was skidding and he applied his brakes but the brakes never caught and he slid right on across the road; that his brakes were in good condition; that he was generally familiar with the road, other than when it was wet; that the road was not marked; that he had no notice or idea that the particular curve was slick; that there was a difference between the road bed on the particular curve and the road he had driven over in that the particular curve was almost like clay which stuck to the bottom of his feet when he got out of the car.

The defendant further testified as shown by the following questions and answers:

"Q. In your own words, tell the jury how the accident happened.

A. Well, like I said, we had left the camp ground and started back and all of the rest of the road seemed like it was just sand and rock and I came upon the curve. Of course, it had a lot of debris, brush and stuff, and I couldn't see around the curve. When I come into the curve, I felt it was slick. I saw the Volkswagen and it looked like about twenty-five (25) feet and I applied my brakes and they never did catch, they just slid right on through the mud.

Q. Mr. Payne, you say you have no idea the curve was slick, is that right?

A. That's right.

Q. Didn't you tell us earlier this morning that you had driven over it after the rain had started?

A. It had just started.

Q. After you left for your first picnic site?

A. Yes, and the picnic site is just about a block from the curve."

\* \* \* \* \* \*

"Q. Mr. Payne, did you ever lose control of your car out there that afternoon at the time of the accident?

A. Well, I don't know whether you would call it out of control or not, it slid in the mud.

Q. Well, did you have control of your car at all times, up to and including the point of impact?

A. I had control up until it started sliding."

Plaintiff cites and relies upon Wisdom v. Bernhardt, 170 Okl. 385, 40 P.2d 679; Shefts Supply Co. v. Purkapile, 169 Okl. 157, 36 P.2d 275, and Shell Petroleum Corporation v. Worley, 185 Okl. 265, 91 P.2d 679, for the proposition that the trial court erred in refusing to direct a verdict for plaintiff as to the issue of liability.

Plaintiff argues that there is a total lack of evidence which would justify a verdict in favor of defendant.

■ The above cited cases stand for the proposition that when the facts are such that reasonable men would not disagree thereon, the issues become one of law for the court. We note that in the case of Shefts Supply Co. v. Purkapile, supra, the following language is used:

" 'The determination of the question of negligence, that is, what is or what is not negligence, in nearly every case is a question for the jury. It is a question of law for the court only in cases where the

admitted facts are so conclusive as to admit of no difference of opinion among reasonable men.' "

Plaintiff contends that defendant was negligent in applying his brakes on a known wet clay surface in meeting a vehicle which was on its own side of the highway and that defendant was traveling too fast for the conditions then and there existing and known to defendant.

In answer to this contention defendant states that he had driven over the same road where the accident later occurred at a time when the rain had just started and at the time the curve was only damp. That about two hours later he drove back over the same roadway after it had been raining for some time and that the roadway, except for the curve, was dirt, sand and rock. That at that time the surface on the curve was different; that it was "almost like clay." He could not see around the curve because of brush in the wooded area. That he did not know the road was slick. That after he entered the curve he felt his car begin to slide; at the "top of the curve" he first saw plaintiff's vehicle approximately 25 feet from him and immediately applied his brakes but the brakes did not retard his slide.

The plaintiff's brief acknowledges that the mere skidding of an automobile onto the wrong side of the highway, without more, will not support a finding of negligence, but states that such is not analogous to the situation here presented.

In passing upon a motion for a directed verdict, the trial court should consider as true all the evidence favorable to the party against whom the motion is directed, together with all the inferences reasonably to be drawn therefrom, and should disregard all conflicting evidence favorable to the movant. Price v. Smith, Okl., 373 P. 2d 242.

We find and hold that there was an issue of fact concerning the cause of the accident and that the case was properly submitted to the jury.

Plaintiff's brief, in arguing her second proposition, cites a number of cases from other jurisdictions to the effect that an instruction on unavoidable accident should not be given because it has been held in such jurisdictions that such an instruction is misleading and leads only to misunderstanding, or that it has been held in such other jurisdictions that it is better practice to refuse to give the instructions. The plaintiff relies on no cases from Oklahoma but simply states that we should follow the holdings from some of the other jurisdictions.

In this jurisdiction we have consistently held that in a proper case an instruction on unavoidable accident is not error.

In the case of Wofford v. Lewis, Okl., 377 P.2d 37, we said:

"In its literal sense, an unavoidable accident is one that could not have been prevented by any means at all, and it may be argued as an abstract proposition that there is no such thing as an unavoidable accident. However, the literal meaning has never been ascribed to the phrase 'unavoidable accident' in this jurisdiction. In Wilson v. Roach, 101 Okl. 30, 222 P. 1000, this court held:

" 'An unavoidable accident' is a casualty which occurs without negligence of either party, and when all means which common prudence suggests have been used to prevent it.' "

Also see Keltch v. Strunk, Okl., 295 P.2d 785; C. F. Church Div. of Amer. Radiator & Standard San. Corp. v. Golden, Okl., 429 P.2d 771.

We are of the opinion and hold that under the facts in the present case the trial court properly gave the instruction on unavoidable accident.

Judgment affirmed.

All Justices concur.