Mac E. ROBINSON, Administrator of the Estate of Gary John Garner, Deceased, and Transcon Lines Corporation, Appellees,

v.

STATE STOVE & MFG. CO., INC., a Tennessee corporation, Appellant.

Mac E. ROBINSON, Administrator of the Estate of Gary John Garner, Deceased, and Transcon Lines Corporation, Appellants,

v.

STATE STOVE & MFG. CO., a Tennessee corporation, Appellee.

No. 45553.

Court of Appeals of Oklahoma, Division No. 1.

Nov. 27, 1973.

Released for Publication by the Court of Appeals Jan. 10, 1974.

Lampkin, Wolfe, Burger, Abel, Mc-Caffrey & Norman, by Ben T. Lampkin, Oklahoma City, for Mac E. Robinson.

Foliart, Mills & Niemeyer, by George W. Dahnke, Oklahoma City, for Transcon Lines Corp.

Pierce, Couch, Hendrickson, Gust & Short, by Hugh A. Baysinger, Oklahoma City, for State Stove & Mfg. Co.

ROMANG, Judge:

This is a suit for wrongful death and property damages. Trial before a jury resulted in a verdict of $250,000.00 for wrongful death, and a verdict of $25,476.95 for property damages. The trial court ordered a remittitur of $100,000.00 on the wrongful death verdict as the condition for denying a new trial. The remittitur was made, but the plaintiff affected thereby, has appealed contending that the trial court abused its discretion in ordering the remittitur. The defendant has appealed from the order overruling its motion for new trial. Upon review this court affirms the trial court judgment in both appeals.

Plaintiffs, Mac E. Robinson, Administrator of the Estate of Gary John Garner, deceased, and Transcon Lines Corporation, joined in a petition against the defendant, State Stove & Mfg. Co., Inc., setting out two causes of action. The first cause of action was for the alleged wrongful death of Transcon's truck driver, Gary John Garner, and the second cause of action was for alleged property damages sustained by Transcon.

References will hereinafter be made to the plaintiffs as Robinson and Transcon or as plaintiffs. Reference will hereinafter be made to the defendant as State Stove or as defendant.

This lawsuit grows out of a collision between two semi-trailer trucks, one belonging to Transcon and the other belonging to State Stove.

The place of the accident was on Interstate Highway 40, a divided four-lane highway, at a point beyond the west end of the North Canadian River Bridge which is about 2.4 miles east of Shawnee, Oklahoma, on said highway, and the time was about 2:00 o'clock A.M. on January 13, 1971.

The said river bridge is approximately one-quarter of a mile in length and is arched in the middle. At the time of the accident, a freezing mist was falling, and the roadway of the bridge was iced over and extremely slick.

State Stove's truck driver testified that he was driving west on the bridge at about 10 or 15 miles per hour; that when he reached the middle of the bridge where the grade changes, his truck began jackknifing on the ice to the left, and before he got to the end of the bridge, it jackknifed to the right, pulling the battery cable loose and thereby causing a loss of all power and lights; that he was able to coast his truck off the bridge and onto the shoulder some 50 or 60 feet west of the west end of the bridge; that some men in a pickup truck stopped, and two of them assisted him in lighting some fusees of which he put two at the end of the bridge and one near the trailer; that he and his brother who was riding with him, left with the men in the pickup so he could get to a telephone and advise his employer, State Stove, as to what had happened; that they drove west to where they could turn around and go east on the opposite side of the highway; that when they got back to the bridge on the opposite side of the highway about ten minutes later, they saw that another truck had run into the State Stove truck and trailer; and he further testified that the flares were burning when they left and they had a burning capacity of 20 minutes.

The other truck that had run into the State Stove unit was that of Transcon, which consisted of a tractor and two trailers. The cab on it had exploded upon impact, and apparently the driver, Gary John Garner, had been killed instantly.

Robinson alleged in the wrongful death action that Gary John Garner was survived by a wife and three minor children, ages 13, 10 and 6 years (the wife was deceased at the time of trial); that the children had

suffered loss of contributions from their father, and that they and the estate had incurred burial expenses; that the defendant was negligent in failing to give or post a warning that the rear of its truck was on the highway, and in failing to have lights on the truck, and that such negligence was the proximate cause of the accident which resulted in the death of Garner.

In the Second Cause of Action alleged, Transcon sought damages for loss of its tractor, one trailer, damages to the second trailer, and for loss of cargo.

State Stove filed an answer and cross-petition, which contained a general and special denial of plaintiffs' allegations, and it further pled the defenses of contributory negligence, unavoidable accident and sudden emergency. State Stove also alleged specific acts of negligence on the part of Transcon's truck driver, and asked for its property damages.

In the trial of the case there was a conflict of evidence on the following: (1) The number and location of the fusees, and as to whether any of them were burning immediately before the collision, (2) as to how far west of the bridge the State Stove truck was stopped, and whether its trailer was partially blocking the north lane of the two west bound lanes of traffic, (3) the point of impact, and (4) the speed of the Transcon truck as it crossed the bridge.

The trial resulted in the two verdicts, the trial court rulings and the two separate appeals mentioned at the outset of this opinion.

By order of the Oklahoma Supreme Court, the two separate appeals have been consolidated under appeal No. 45,553. The appeal of State Stove has been designated as the principal appeal, and the appeal of the plaintiff Robinson has been designated as the adjunctive appeal.

We will first consider the adjunctive appeal which presents a single proposition, to-wit:

"THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING THE PLAINTIFF TO SUBMIT TO A RE-MITTITUR AND, THEREFORE, THE ORIGINAL JURY VERDICT SHOULD BE REINSTATED."

Robinson asserts in his brief as follows:

"The power to grant a remittitur as an alternative to a new trial is bound by two limitations. First, it must appear that there were some grounds on which the trial court could have granted a new trial, and second, the trial court's discretion or lack thereof may be reviewed for possible abuse. 6 Okla.L.Rev. 338 (1953)."

We have examined the cited law review article, and we agree that it contains a correct statement of the law, including the following:

"By virtue of statute Oklahoma trial courts in the exercise of their sound discretion may grant new trials where it appears that the verdict returned by the jury is excessive or inadequate under the law and evidence of the case.

\* \* \* \* \* \*

"Remittitur. It is well settled in Oklahoma that a trial court may, with a few exceptions, order a remittitur as a condition to denying a new trial, and in so doing it has been held that the court is not invading the province of the jury as to value. The theory is that the plaintiff cannot object because of his consent,

. . .

"Whether or not a remittitur will be ordered is left to the sound discretion of the trial court, subject to review on appeal only as to an abuse of that discretion. However, the trial court cannot be compelled to order a remittitur instead of a new trial, nor may the trial court order a remittitur and enter judgment thereon without the consent of the successful party."

12 O.S.1971, § 651, reads in pertinent part as follows:

". . . The former verdict, . . . shall be vacated, and a new trial granted, on the application of the party ag-

grieved, for any of the following causes, affecting materially the substantial rights of such party:

\* \* \* \* \* \*

"Fourth. Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice."

In the instant case the trial court order relating to the motion for new trial and the remittitur, contains the following:

"That the amount of damages awarded to the plaintiff Mac E. Robinson, Administrator of the Estate of Gary John Garner, is excessive and not supported by evidence, and the Court cannot approve the amount of the verdict."

In Cosden Pipe Line Co. v. Seybold, 168 Okl. 36, 31 P.2d 605 (1933), the Oklahoma Supreme Court said:

" . . . This court follows the general rule that a remittitur may be ordered where the amount of the verdict is excessive, whether the excess is susceptible of computation or not."

In Wells v. Max T. Morgan Co., 205 Okl. 166, 236 P.2d 488 (1951), the court syllabus states:

"When a trial court in good conscience believes that a verdict is excessive, it may properly impose upon plaintiff the alternative of accepting a judgment in a reduced amount or of having a new trial granted."

Plaintiff Robinson asserts in his brief as follows:

" . . . The issue of liability was conclusively determined to the parties by the trial court in overruling the motion for new trial as to the plaintiff Transcon Lines Corporation. Yet the trial court stated in the order that unless the plaintiff Robinson filed the remittitur, the defendant would be granted a complete new trial on all issues as to only one plaintiff, Robinson. This is a clear abuse of discretion on the part of the trial court."

In the instant case there are separate plaintiffs recovering on separate causes of action. Robinson recovered for wrongful death, and Transcon recovered for property damages.

Under 12 O.S.1971, § 651, the trial court has an absolute right, in the absence of abuse of discretion, to grant a new trial on a separate cause of action as to both damages and liability, when the verdict appears excessive and to have been given under the influence of passion or prejudice.

From our review of the record, and the consideration of the briefs of Robinson, we find no abuse of discretion on the part of the trial court as to either the ordering of the remittitur or as to the amount ordered.

We find no merit in Robinson's request for alternative relief in the way of a new trial on the issue of damages only.

As relates to the adjunctive appeal, the judgment of the trial court is affirmed.

In the principal appeal, State Stove presents three propositions. The first is:

"The trial court erred in giving the 'second statute' in instruction # 5 because part (A) applicable to undivided highways and requiring warning devices when a vehicle is disabled on the roadway *or shoulder* is not applicable to the facts of this case and is inconsistent with part (C) which is applicable to divided highways and does not require warning devises where a vehicle is disabled on the shoulder. Moreover, the statutory spacing requirement was not within the issues."

The part of Instruction No. 5 under attack, reads as follows:

"SECOND STATUTE: (a) Whenever any motor truck, bus tractor, trailer semitrailer or pole trailer, \* \* \* is disabled upon the traveled portion of any highway or the shoulder thereof outside of any municipality at any time when lighted lamps are required on vehicles the driver of such vehicle

shall display the following warning devices upon the highway during the time the vehicle is so disabled on the highway * * *

"1. A lighted fusee, a lighted red electric lantern or a portable red emergency reflector shall be immediately placed at the traffic side of the vehicle in the direction of the nearest approaching traffic.

"2. As soon thereafter as possible but in any event within the burning period of the fusee (15 minutes), the driver shall place three liquid-burning flares (pot torches), or three lighted red electric lanterns or three portable red emergency reflectors on the traveled portion of the highway in the following order:

"a. One approximately one hundred feet from the disabled vehicle in the center of the lane occupied by such vehicle and toward traffic approaching in that lane.

"b. One approximately one hundred feet in the opposite direction from the disabled vehicle and in the center of the traffic lane occupied by such vehicle.

"c. One at the traffic side of the disabled vehicle not less than ten feet rearward or forward thereof in the direction of the nearest approaching traffic. If a lighted red electric lantern or a red portable emergency reflector has been placed at the traffic side of the vehicle in accordance with paragraph (a) of this section, it may be used for this purpose.

"(c) Whenever any vehicle of a type referred to in this section is disabled upon any roadway of a divided highway during the time that lights are required, the appropriate warning devices prescribed in paragraphs (a) * * * of this section shall be placed as follows: One at a distance of approximately two hundred feet from the vehicle in the center of the lane occupied by the stopped vehicle and in the direction of traffic approaching in that lane; one at a distance of approximately one hundred feet from the vehi-

cle, in the center of the lane occupied by the vehicle and in the direction of traffic approaching in that lane; one at the traffic side of the vehicle and approximately ten feet from the vehicle in the direction of the nearest approaching traffic."

State Stove contends that the inclusion of both paragraph (a) and (c) of 47 O.S. 1971, § 12–408, confronted the jury with inconsistent instructions and that paragraph (a) applies generally to undivided highways while paragraph (c) applies specifically to divided highways.

47 O.S.1971, § 12–408(a) reads:

"Whenever any motor truck . . ., is disabled upon the traveled portion of *any* highway or the shoulder thereof, . . . when lighted lamps are required on vehicles the driver of such vehicle shall display the following warning devices upon the highway . . ." (Emphasis added.)

In Shattuck v. Grider, 493 P.2d 829 (Okl.Cr.1972), the court syllabus holds:

"The use of the word 'any' within a statute is equivalent and has the force of 'every' and 'all'."

Webster's New Collegiate Dictionary defines the word "any" as follows:

"Being one indiscriminately of whatever kind; no matter what one; . . . also, every; . . ."

■ In paragraph (a) of § 12–408 the phrase, "any highway or the shoulder thereof," has the implicit meaning of every and all highways or the shoulders thereof, whether such highways are undivided or divided.

Paragraph (c) of § 12–408 reads in part as follows:

"Whenever any vehicle of a type referred to in this section is disabled upon any roadway of a divided highway during the time that lights are required, the appropriate warning devices prescribed in paragraphs (a) and (e) of this section shall be placed as follows:"

Paragraph (c) then provides that one warning device shall be placed approxi-

mately 200 feet, and a second one approximately 100 feet back and in the center of the lane occupied by the stopped vehicle.

Thus paragraph (c) makes an additional requirement when a vehicle is disabled on the roadway of a divided highway at night.

In Meads v. Human, 84 Okl. 82, 202 P. 797 (1921), the court syllabus states:

"In considering a legislative enactment it is not safe to base a construction upon a particular word or phrase, for the language of legislative enactments is not always precise and accurate, and, besides, one portion may frequently be designed to extend, qualify, or limit another so that the meaning of one portion of a statute may depend upon the effect of another. Hence, it is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole, and of every part of a statute taken and compared together. The several provisions of the statute should be construed together in the light of the general purpose and object of the act, and so as to give effect to the main intent and purpose of the Legislature as therein expressed. If possible, a statute should be so construed as to render it a consistent and harmonious whole; if different portions seem to conflict, they should, if practicable, be harmonized, that construction being favored which will render every word operative rather than one which makes some words idle and nugatory."

■ Notwithstanding the contentions of the defendant to the contrary, paragraph (a) of 47 O.S.1971, § 12–408, applied if defendant's truck and trailer were stopped entirely on the shoulder; and if any part of defendant's truck or trailer remained on the roadway of the divided highway, then paragraph (c) applied.

Two witnesses, Johnson and Seckle, both of whom traveled across the bridge in a westerly direction after defendant's truck was stopped, but before the accident, testified that the rear end of defendant's trailer was sticking out 4 or 5 feet into the outside lane of the roadway. Seckle was one of defendant's witnesses. Defendant's other witnesses testified that defendant's truck and trailer were stopped entirely on the shoulder. Due to this conflict of testimony, it was necessary that the court include both paragraphs (a) and (c) in the instructions.

■ Defendant alleges that the bridge was too icy for its driver to walk on it and place warning devices thereon, and that the trial court should have instructed that if its driver was prevented by circumstances from placing the warning flares at the distances prescribed by statute, and acted reasonably under the circumstances, then statutory compliance was excusable.

The evidence was conflicting as to whether defendant's driver could have walked back onto the bridge and put warning devices thereon.

Defendant requested no instruction excusing statutory compliance, and in examining defendant's Motion for New Trial, we find that this alleged error was not mentioned, and it is not mentioned in defendant's Petition in Error which repeats the allegations of its Motion for New Trial.

12 O.S.1971, § 991, provides in part:

"(b) If a motion for a new trial be filed and a new trial be denied, the movant may not, on the appeal, raise allegations of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted."

In view of this statute, we decline to consider further said alleged error.

Defendant failed to comply with the provisions of either paragraph (a) or (c) in putting out warning devices. However, defendant asserts as follows:

"The fact that the flares were not placed at the correct distances, or were out improperly, was not an issue."

Defendant contends that the proximate cause of the collision was that the speed of Transcon's truck was too great under the circumstances, and that it went out of control and was torn apart before it reached

the end of the bridge. In this regard, proximate cause was a question of fact for the jury, and it must be assumed that the jury considered the speed of Transcon's truck, as well as the other evidence including that on warning devices, in reaching its verdict as to the proximate cause of the accident.

Plaintiffs alleged in their petition as follows:

> "The collision was the result of defendant's negligence as follows: (a) Defendant failed to give or post warning that the rear of its truck was on the highway when it knew and should have known that without warning plaintiff's decedent's truck would collide with the rear of defendant's truck. (b) Defendant's truck was without lights, when defendant knew and should have known that without lights, plaintiff's decedent's truck would be likely to collide with it."

It is undisputed that there were no lights on defendant's truck or trailer. There was some testimony that there was no fusee or flare burning at the time of the accident.

In Jones v. Farmer, 369 P.2d 817 (Okl. 1962), the Oklahoma Supreme Court quotes with approval from 60 C.J.S. Motor Vehicles § 335, p. 779, as follows:

> " 'The operator of a standing or parked vehicle which constitutes a source of danger to other users of the highway is generally bound to exercise ordinary or reasonable care to give adequate warning or notice to approaching traffic of the presence of the standing vehicle, and such duty exists irrespective of the reason for stopping the vehicle on the highway. So the driver of the stopped vehicle must take such precautions as would reasonably be calculated to prevent injury, whether by the use of lights, flags, guards, or other practical means and failure to give such warning may constitute negligence, even in the absence of any specific duty imposed by governmental regulation. * * *' "

In view of the pleading and evidence herein, we find and hold that both paragraphs (a) and (c) of 47 O.S.1971, § 12–408 were proper and necessary as a part of the instructions given by the trial court.

Defendant's second proposition is:

> "The trial court erred in refusing to instruct the jury on unavoidable accident where the issue was raised in the pleadings and there was sufficient evidence at the trial to support a finding that the accident resulted solely from the ice on the bridge."

Defendant's position as stated by it, is as follows:

> "It is the defendant's position that there was substantial evidence in the record from which the jury could reasonably have concluded that neither the decedent nor the defendant were guilty of any culpable negligence, and that the TRANSCON truck simply went out of control as had several other vehicles, due to the ice on the bridge. In its answer, the defendant alleged as an affirmative defense unavoidable accident. The defendant requested the court to instruct on this issue. Under the evidence in this case the trial court had a duty to instruct on this issue. C. F. Church Div. of Amer. R. & S. San. Corp. v. Golden, Okl., 429 P.2d 771, 776 (1967), Gwinn v. Payne, Okl., 477 P.2d 680 (1970), Peterson v. Sapp, Okl., 385 P.2d 498 (1963)."

In Gwinn v. Payne, 477 P.2d 680 (Okl. 1970), relied upon by defendant, the court syllabus states:

> "Where, upon consideration of all of the evidence, the jury might reasonably conclude that neither plaintiff nor defendant was guilty of negligence proximately causing the accident, and that the accident could not have been prevented by either party in the exercise of reasonable care, the issue of unavoidable accident may properly be presented to the jury in an appropriate instruction."

In Peterson v. Sapp, 385 P.2d 498 (Okl. 1963), another case relied upon by defendant, the opinion contains the following:

> "In Wofford v. Lewis, Okl., 377 P.2d 37, we said:
>
> > " 'In its literal sense, an unavoidable accident is one that could not have been

prevented by any means at all, and it may be argued as an abstract proposition that there is no such thing as an unavoidable accident. However, the literal meaning has never been ascribed to the phrase "unavoidable accident" in this jurisdiction. In Wilson v. Roach, 101 Okl. 30, 222 P. 1000, this court held:

" 'An "unavoidable accident" is a casualty which occurs without negligence of either party, and when all means which common prudence suggests have been used to prevent it.' "

As to whether the evidence in the instant case would warrant an instruction on unavoidable accident, has been resolved in the negative by the verdict of the jury, which carries with it a finding of negligence on the part of the defendant.

In Jones v. Farmer, 369 P.2d 817 (Okl. 1962), plaintiff sued for personal injuries allegedly caused from running into a wrecker which was partially obstructing a highway while helping a disabled car. The defendant contended that the trial court should have instructed on unavoidable accident. In rejecting that contention the court said:

" . . . In view of the fact that the jury found upon competent evidence that defendants were negligent, the doctrine of unavoidable accident was inapplicable and for said reason the court did not err in failing to instruct on the doctrine."

Defendant contends that the Jones case "is not in point with the present appeal for the reason that the defense of unavoidable accident was not plead and instruction on that issue was not requested." We fail to see where this difference would vitiate the principle of law set out above.

In Lewis v. Buckskin Joe's, Inc., 156 Colo. 46, 396 P.2d 933 (1964), the Supreme Court of Colorado said:

" . . . Instructions on negligence and contributory negligence are sufficient and inclusive of so-called unavoidable accidents. To further instruct on unavoidable accident serves only to twice tell the jury that the plaintiff cannot recover unless he proves negligence."

Some other cases holding that an unavoidable accident instruction should not be given in any case, are: Schaub v. Linehan, 92 Idaho 332, 442 P.2d 742 (1968); Hidden v. Malinoff, 174 Cal.App.2d 845, 345 P.2d 499 (Calif.1959); and Fenton v. Aleshire, 238 Or. 24, 393 P.2d 217 (1964).

While the Oklahoma Supreme Court holds that under some facts and circumstances an unavoidable accident instruction may be given or should be given, the defendant has cited no case wherein the failure to instruct on unavoidable accident has been held to constitute reversible error even though the evidence was such as to justify the instruction under Oklahoma law.

■■ An unavoidable accident instruction prescribes no duty of care or standard of conduct, but assuming arguendo, that it was warranted under the evidence of the instant case, the failure to give it would not constitute reversible error. We find no merit in defendant's Proposition II.

Defendant's third and final proposition reads as follows:

"Where the plaintiff, Robinson, failed to offer any evidence that the deceased had children or left any survivors at the time of his death or that anyone would suffer pecuniary loss as the result of the deceased's death, and where the plaintiff further failed to prove his appointment as administrator of the deceased's estate, the plaintiff, Robinson, failed to prove his cause of action. Therefore:

"1. The trial court erred in overruling the defendant's demurrer to the evidence and motion for directed verdict;

"2. The trial court erred in instructing the jury that the deceased had three children at the time of his death and that the plaintiff was entitled to a presumption of pecuniary loss to the three 'minor children'; and

"3. The jury verdict is unsupported by the evidence."

No question was raised about the appointment of Robinson as administrator until the filing of defendant's brief in this appeal.

The Pre-trial Conference Order, signed by the trial judge and the attorneys for both sides, contains the following printed question:

"Are parties proper, correctly named or identified?" The handwritten answer with pen and ink is "Yes".

■ A defect of parties cannot be raised for the first time on appeal. Also, where the question of defect of parties is not raised by demurrer or answer, it is waived, and a general demurrer does not raise the question of defect of parties. Subscribers at Casualty Reciprocal Exch. v. Simms, 293 P.2d 578 (Okl.1956); Cornell v. Morgan, 205 Okl. 127, 235 P.2d 946 (1951).

■ There is also another reason as to why the question of defect of parties cannot now be raised by the defendant, and that is because the defendant sought affirmative relief in its cross-petition against the plaintiffs. Leveridge v. Notaras, 433 P.2d 935 (Okl.1967). Also, defendant's answer and cross-petition were not verified. 12 O.S.1971, § 286 reads as follows:

"In all actions, allegations of the execution of written instruments and endorsements thereon of the existence of a corporation or partnership, or of any appointment of authority, or the correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney."

In view of the above, we hold that the defendant has waived any right to question the appointment of Robinson as administrator and his authority to bring this action.

In answer to defendant's Proposition III, plaintiff Robinson asserts as follows:

"The children were physically present at the trial, introduced to the jury in voire dire, alluded to in the opening statements, the closing arguments and the instruction, with no objections from the defendant at any point until their brief was filed in the Supreme Court for the State of Oklahoma."

Said assertion is neither denied nor disputed in defendant's reply brief. It appears that the presence and identity of the three minor children were made known to the jury by remarks of counsel for both sides. We know of no better proof of their existence than their physical presence in front of the jury, which presence also afforded the jury an opportunity to know their proximate ages.

■ The law presumes a substantial pecuniary loss to minor children as a result of the death of their father. In Tackett v. Tackett, 174 Okl. 51, 50 P.2d 293 (1935), the court syllabus states:

"In a case of wrongful death, the law will imply substantial loss to a minor child of the deceased, since it is the legal duty of the father to support his minor child, and the right to recover damages does not depend on whether the father had supported or intended to support the child."

In Wray v. Garrett, 189 Okl. 28, 113 P.2d 367 (1941), the court syllabus reads as follows:

"That a daughter of the deceased reached her majority after his death, but prior to the trial of an action for wrongful death brought by the administratrix of deceased on behalf of such daughter and the widow of deceased, does not deprive her of the benefit of the presumption that by his death she sustained substantial loss."

In the instant case there was a stipulation as to the life expectancy of the deceased father and as to the amount of his gross earnings for the last two years before his death.

Among the instructions given by the court without any objection on the part of the defendant, were the following:

"No. 2. LEGAL REPRESENTATIVE

"The plaintiff, Mac E. Robinson, brings this lawsuit in a representative

capacity by reason of his being the Administrator of the Estate of Gary John Garner, deceased. The persons he represents are Eddie Ray Garner, Steven Clay Garner, and Michaela Rose Garner, the two sons and daughter of the deceased. They are the real parties in interest in this lawsuit and in that sense are the real plaintiffs, whose damages you are to determine if you decide for the Administrator of the Estate of Gary John Garner.

\* \* \* \* \* \*

"No. 8. DAMAGES

"If you decide for the plaintiffs on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate the minor children of the deceased for the financial loss proved by the evidence to have resulted to them from the death of the decedent.

"The law recognizes a presumption that the minor children have sustained some financial loss by reason of the death.

"In determining financial loss, and the weight to be given to the presumption of financial loss, you may consider what benefits of financial value, including money, goods, and services the decedent might reasonably have been expected to contribute to his minor children had the decedent lived. It has been stipulated by the parties that the plaintiff, Mac E. Robinson, Administrator of the Estate of Gary John Garner, Deceased, has sustained damages in the following amounts:

"Ambulance Service          $35.00
"Funeral Services        $1,562.74

"If you find for the plaintiffs the damages that you assess for the plaintiff, Mac E. Robinson, must include these two amounts."

■ Defendant complains that the trial court did not instruct as to the ages of the minor children, and that Instruction No. 8 "did not limit the presumption of pecuniary loss to the period of minority and therefore did not properly advise the jury as to the measure of damages." By the same token we note that No. 8 did not extend the presumption of pecuniary loss beyond minority. The instruction twice refers to minor children and says nothing about adult children. Defendant requested no instruction on the measure of damages and did not except to the one given, so defendant is not now in a position to complain, in the absence of any fundamental error, and we find no such error.

■ It is significant that defendant's demurrer to plaintiffs' evidence at the close thereof, and its demurrer and motion for directed verdict when both sides had rested, were based upon the sole ground that plaintiffs had wholly failed to prove any negligence on the part of the defendant.

We are satisfied from our review of the evidence, that there was sufficient evidence to submit this case to the jury on the questions of negligence and contributory negligence. The jury was specifically instructed that in order for the plaintiffs to recover, it must find that defendant's truck driver was negligent and that such negligence was the cause of plaintiffs' damages. The jury was further instructed that if it found that both truck drivers were negligent, and that the negligence of each was a contributing cause of the collision, then neither side could recover.

From our review of the record and the evidence, we are convinced that there is sufficient competent evidence to sustain the verdict as to liability, and in view of the presumption in law of substantial pecuniary loss to minor children resulting from the death of their father, and taking into account the instructions given without objection, we find that the verdict and judgment rendered thereon after remittitur, should be, and the same are hereby affirmed.

The judgment of Transcon is also affirmed.

Affirmed.

BAILEY, P. J., and BOX, J., concur.